IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED LABORATORIES, INC., a Delaware Corporation, et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 06 C 1442 |
| MAUREEN R. SAVAIANO, individually, as executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust, et al., ) ) ) ) ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 13, 2006, plaintiffs United Laboratories, Inc. ("United Labs") and Julie Anne Benson (as directed Trustee on behalf of United Labs' Employee Stock Ownership Plan ("ESOP I") and United Labs' Leveraged Employee Stock Ownership Plan ("ESOP II")) (collectively "Plaintiffs") filed a nine-count Amended Complaint alleging claims for breach of fiduciary duty, prohibited transactions, unjust enrichment, aiding and abetting breach of fiduciary duty, breach of contract, and conspiracy, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and state common law. The Amended Complaint was directed against defendants Willamette Management Associates Inc. ("Willamette"), Cole Taylor Bank ("Cole Taylor"), and former United Labs' Board of Directors members Maureen R.

1

Savaiano,[1] Donald F. Savaiano,[2] Robert G. Difino, and Jamie Savaiano Maloney ("the Savaiano Defendants").

Plaintiffs' claims generally arise out of the events surrounding the creation of the ESOP II in August, 1996.[3] One pivotal step in the creation of the ESOP II was the sale of United Labs stock to the ESOP II by the Savaiano Defendants, on August 28, 1996 (the "Transaction"). Plaintiffs allege that, in this Transaction, the ESOP II paid more than fair market value for the Savaiano Defendants' shares. In their Amended Complaint, Plaintiffs accuse the Savaiano Defendants of engaging in prohibited transactions (Count II), breaching their fiduciary duties to the ESOP II and United Labs (Counts III-V), unjust enrichment (Count VI), and conspiracy (Count IX). Cole Taylor is alleged to have facilitated the Transaction pursuant to its role as Trustee to the ESOP II. On June 5, 2006, the court granted Plaintiffs' motion to voluntarily dismiss Cole Taylor as a defendant in this case.

Despite the dismissal of Cole Taylor as a defendant, the Savaiano Defendants filed a Third-Party Complaint against Cole Taylor on October 27, 2006. (Dkt. No. 79). Cole Taylor has moved to dismiss the Savaiano Defendants' Third-Party Complaint in its entirety. (Dkt. No. 127). For the reasons discussed below, Cole Taylor's Motion to Dismiss the Savaiano Defendants' Third-Party Complaint is granted in part and denied in part. Count II is dismissed. Counts IV and V are dismissed insofar as they are asserted by Maureen Savaiano, Donald

---

[1] Maureen Savaiano is sued individually, as executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust.

[2] Donald Savaiano is sued individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust.

[3] Although Plaintiffs assert additional claims, those claims are not relevant to the Third-Party Complaint or the motion currently before the court.

Savaiano, Robert Difino, and Jamie Savaiano Maloney. All other counts remain pending.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As long as the factual allegations in the complaint "raise a right to relief above the speculative level," the complaint will withstand a 12(b)(6) challenge. *Twombly*, 127 S. Ct. at 1965; *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1965). However, a plaintiff can plead himself out of court if a complaint includes facts that undermine its own allegations. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). Any exhibits attached to a complaint are considered to be a part of the pleadings. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

## ANALYSIS

In their Third-Party Complaint, the Savaiano Defendants generally assert that they relied upon Cole Taylor's representations "that the purchase price for their shares was fair and legal, that the transaction complied with ESOP II and ERISA requirements and that the conditions precedent in the Stock Purchase Agreement were satisfied." (Third-Party Compl. ¶ 33). Accordingly, the Savaiano Defendants contend that "Cole Taylor is liable to the Savaiano

Defendants if the Savaiano Defendants have any liability to the Plaintiffs relating to the Transaction." (*Id.* ¶ 7). Specifically, the Savaiano Defendants allege that Cole Taylor breached the Amended and Restated Stock Purchase Agreement (the "Stock Purchase Agreement" (Dkt. No. 79, Ex. 4)) (Count I), that Cole Taylor breached the Leveraged Employee Stock Ownership Trust Agreement (the "Trust Agreement" (Dkt. No. 79, Ex. 3)) (Count II), and that Cole Taylor was negligent in both valuing and effecting the purchase of the Savaiano Defendants' shares (Count III). Furthermore, the Savaiano Defendants argue that Cole Taylor owes them an implied duty of indemnification (Count IV) or, in the alternative, a duty of contribution (Count V).

1. Statute of Limitations on Breach of Contract Claims

At the outset, Cole Taylor argues that both Counts I and II of the Third-Party Complaint are time-barred, due to the applicable statute of limitations for breach of contract claims. Under Illinois law, actions on written contracts "shall be commenced within 10 years next after the cause of action accrued." 735 Ill. Comp. Stat. 5/13-206.[4] "[F]or contract actions and torts arising out of contractual relationships, the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *Ind. Ins. Co. v. Machon & Machon, Inc.*, 753 N.E.2d 442, 445 (Ill. App. Ct. 1st Dist. 2001) (citing *W. Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 370 N.E.2d 804, 807 (Ill. 1977)).

In this case, the relevant breaches of contract are alleged to have occurred on or about

---

[4] The court's jurisdiction over the Savaiano Defendants' third-party claims is supplemental to its jurisdiction over the federal claims in United Labs' Amended Complaint. *See* 28 U.S.C. § 1367(a). The parties do not dispute that Illinois law applies to the claims set forth in the Savaiano Defendants' Third-Party Complaint.

August 28, 1996, or the date the Transaction was executed. Because the Savaiano Defendants did not file their Third-Party Complaint until October 27, 2006, Cole Taylor argues that the breach of contract claims fall outside of the ten-year limitation period. In response, the Savaiano Defendants contend that the discovery rule applies to their breach of contract claims, such that the statute of limitations accrued only when the Savaiano Defendants knew or should have known that they had been injured and that their injury was wrongfully caused. *See Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994)). The Savaiano Defendants argue that they did not know of Cole Taylor's potential breaches of the Stock Purchase Agreement and Trust Agreement until United Labs filed its Complaint against the Savaiano Defendants on March 15, 2006. If the statute of limitations did not begin to run until March 15, 2006, the breach of contract claims would be considered timely filed on October 27, 2006.

In support of their assertion that a breach of contract claim accrues at the time the contract is breached, Cole Taylor directs the court to the case of *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995). Cole Taylor is correct to cite *Hermitage* for the proposition that "the cause of action *ordinarily* accrues at the time of the breach of contract, not when a party sustains damages." *Id.* (citing *Lobianco*, 370 N.E.2d at 807) (emphasis added). However, the *Hermitage* court goes on to recognize that "[l]iteral application of the statute of limitations, however, sometimes produced harsh results, and in response, the discovery rule was developed." *Id.* The purpose of the discovery rule is "to avoid mechanical application of a statute of limitations in situations where an individual would be barred from suit before he was aware that he was injured." *Id.* The *Hermitage* court also made clear that the discovery rule can

apply in situations where discovery of the injury occurred before the statute of limitations has fully run. *Id*. at 1136-38.

Cole Taylor argues in its reply brief that the Savaiano Defendants have presented no cases in which the discovery rule was applied to a breach of contract claim. (Dkt. No. 144 at 2). *Hermitage*, however, is just such a case. In *Hermitage*, the Illinois Supreme Court applied the discovery rule to a claim alleging breach of an oral agreement, recognizing that the discovery rule is applicable to any type of claim, unless there is "a contrary indication of legislative intent, such as a statute of repose, which places an absolute outer time limit on when an action can be brought." *Id.* at 1135.

The question of whether the Savaiano Defendants knew or should have known of their claims against Cole Taylor is a question of fact. *Jackson Jordan, Inc.*, 633 N.E.2d at 631. Discovery on this issue will assist the parties and the court in evaluating Cole Taylor's statute of limitations defense. At this point in the proceedings, Cole Taylor has not argued that the Savaiano Defendants knew or should have known of their breach of contract claims at any point before March 15, 2006, or that the Savaiano Defendants have otherwise plead themselves out of court. Accordingly, the court declines to find at this time that the Savaiano Defendants' breach of contract claims are barred by the applicable statute of limitations. Cole Taylor's motion to dismiss Counts I and II on these grounds is denied.

2. Arbitration Provision of the Stock Purchase Agreement

Cole Taylor also asks the court to "dismiss [Count I] for improper venue, and compel the Savaiano Defendants to arbitrate." (Dkt. No. 128 at 7). In support of its position, Cole Taylor cites to the arbitration clause of the Stock Purchase Agreement, which provides:

> Any controversy or claim arising out of or relating to this Agreement or any alleged breach of this Agreement shall be settled by arbitration in Chicago, Illinois in accordance with the rules of the American Arbitration Association then in force. . .

(Stock Purchase Agreement at ¶ 21). Cole Taylor argues that because the language in the arbitration clause explicitly refers to a breach of contract claim, Count I must be dismissed on the grounds of improper venue.

The problem with Cole Taylor's assertion is that *venue* is proper in the Northern District of Illinois, even under the arbitration clause. While it is appropriate for a district court to dismiss a case on the grounds of improper venue after finding that a forum selection clause requires arbitration in another district, *see Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005), that is not the case here. In general, "the fact that a contract specifies arbitration as the mode of resolving disputes arising under it is not a ground for dismissing a suit for breach of the contract. Rather it is a ground for an order to arbitrate." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 890 (7th Cir. 2004). Cole Taylor's motion to dismiss Count I for improper venue is therefore denied.

Although the court could construe Cole Taylor's remaining request as a "motion to compel arbitration," the court is reluctant to do so at this point in the proceedings. Cole Taylor originally requested an order compelling the Savaiano Defendants to arbitrate in conjunction with its motion to dismiss all counts of the Third-Party Complaint. Within this procedural

posture, neither Cole Taylor nor the Savaiano Defendants had reason to address whether the other claims in this case should be stayed pending the outcome of arbitration proceedings. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971-72 (7th Cir. 2007) (expressing concern that "piecemeal litigation" could result in inconsistent rulings, if the arbitration panel were to resolve issues material to the lawsuit). Because Counts III, IV and V remain pending against Cole Taylor after the issuance of today's order (see discussion below), the court is reluctant to order arbitration on Count I without input from the parties as to the appropriate scope of any concurrent stay in proceedings on the remaining counts. Cole Taylor's request for an order compelling arbitration is therefore denied without prejudice to refiling under an appropriate motion.

3.  The Savaiano Defendants' Standing to Enforce the Trust Agreement

Cole Taylor argues that Count II fails to state a claim for breach of contract, because the Savaiano Defendants are neither parties to nor third-party beneficiaries of the Trust Agreement. "Under Illinois law, a cause of action based on a contract may be brought only by a party to that contract, by someone in privity with such a party, or by an intended third-party beneficiary of the contract." *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001) (citing *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 109 (Ill. App. Ct. 1st Dist. 1991) and *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 186-87 (Ill. 1981)).

The Savaiano Defendants argue first that they are "direct beneficiaries" of the Trust Agreement, due to their status as parties to the Stock Purchase Agreement. In other words, the Savaiano Defendants argue that the Stock Purchase Agreement and the Trust Agreement constitute a single contract, and the Savaiano Defendants should be viewed as parties to the

8

contract as a whole. Under Illinois law,

> in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract.

*In re Croake*, 578 N.E.2d 567, 568 (Ill. App. Ct. 1st Dist. 1991) (citing *Tepfer v. Deerfield Sav. & Loan Ass'n.*, 454 N.E.2d 676 (Ill. App. Ct. 1st Dist. 1983)). In this case, however, the Stock Purchase Agreement and the Trust Agreement were only signed by some of the same parties. Notably, none of the Savaiano Defendants were listed as individual parties to the Trust Agreement, which was signed only by United Labs and Cole Taylor. The Savaiano Defendants have cited to no Illinois case in which documents signed by different parties were incorporated into one contract, such that a litigant was permitted to sue as a party to a contract that he or she did not sign.

The Savaiano Defendants cite to *McKown v. Davis*, 454 N.E.2d 1086, 1088 (Ill. App. Ct. 3d Dist. 1983), for the proposition that "identity of the parties is not lost merely because the documents were singed by persons in different capacities." (Dkt. No. 138 at 5). While this may be true, *McKown* is distinguishable on the facts of that case. In *McKown*, the defendant drafted a promissory note to the president of a corporation as part of a deal to purchase three travel agencies from the corporation. Because the note was part of the overall purchase of the travel agencies, the court concluded that "the proceeds belonged to the corporation" and "[t]he fact that the president of the corporation was named as the payee rather than the corporation does not alter the fact that the parties were the same for both the purchase agreement and the note." *Id.*

Unlike *McKown*, in this case there is no party that can be seen as standing in place of the Savaiano Defendants as a signatory to the Trust Agreement. The Trust Agreement specifically

9

states that it is entered into "by and between United Laboratories, Inc., a Delaware corporation (the 'Company'), and Cole Taylor Bank, a banking corporation organized and existing under the laws of the State of Illinois, and its successor or successors and assigns in the trust hereby evidenced, as Trustee (the 'Trustee')." (Trust Agreement at 1). While Nicholas Savaiano signed the Trust Agreement in his capacity as President of United Labs, there is no reason to believe that he simultaneously represented the rights of the individual Savaiano Defendants, as well. Because the Savaiano Defendants are not represented as signatories to the Trust Agreement, the court finds that they do not have a right to enforce the Trust Agreement as parties to that contract.

In the alternative, the Savaiano Defendants argue that they are third-party beneficiaries of the Trust Agreement. As a general matter, "[a] person who is not a party to a contract may nevertheless sue based on the contract if that person is directly benefitted by the contract." *Paukovitz v. Imperial Homes, Inc.*, 649 N.E.2d 473, 475 (Ill. App. Ct. 3d Dist. 1995) (citing *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 400 N.E.2d 918, 919 (Ill. 1980)). In order to be considered a direct third-party beneficiary, the contracting parties must have "manifested in their contract an intent to confer a benefit upon the third party." *Altevogt*, 421 N.E.2d at 187; *see also MacGregor v. Rutberg*, 478 F.3d 790, 794 (7th Cir. 2007). "In short, the intention of the parties, as evidenced by the contract, determines whether or not a third-party beneficiary may sue." *Resnik*, 400 N.E.2d at 920. Illinois courts have consistently emphasized that "the alleged third-party beneficiary must be expressly named in the contract." *Paukovitz*, 649 N.E.2d at 475 (citing *Wheeling Trust & Sav. Bank v. Tremco, Inc.*, 505 N.E.2d 1045 (Ill. App. Ct. 1st Dist. 1987)); *see also 155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*,

10

568 N.E.2d 365, 375 (Ill. App. Ct. 1st Dist. 1991). On the other hand, a party who is named only by class description can enforce the contract as a third-party beneficiary, if able to prove membership in the class. *Tax Invs., Ltd. v. Fed. Deposit Ins. Corp.*, 763 F. Supp. 1452, 1456 (N.D. Ill. 1991). Illinois courts consider both the language of the contract and "the circumstances surrounding the parties at the time of its execution" in determining the intent of the parties. *Resnik*, 400 N.E.2d at 919 (quoting *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931)).

In this case, the Savaiano Defendants argue that they should be afforded "an opportunity to conduct discovery and offer evidence concerning the circumstances surrounding the parties at the time the Trust Agreement and Stock Purchase Agreement were executed." (Dkt. No. 138 at 6-7). Discovery on this question is unnecessary, however, because the Savaiano Defendants have failed to point to any language in the Trust Agreement suggesting that the Savaiano Defendants were intended third-party beneficiaries of that agreement. The Trust Agreement does recognize Cole Taylor's discretion to purchase United Labs stock for the initial creation of the ESOP II, (Trust Agreement §§ 2.3(e), 3.1), and Cole Taylor is further empowered "to contract or otherwise enter into transactions between itself, as Trustee, and the Company or any Company shareholder, for the purpose of acquiring or selling Company Stock." (Trust Agreement § 2.3(e)). However, other than in this one reference to "any Company shareholder," the Trust Agreement does not again refer to the Savaiano Defendants by name, class, or implication at any other point in the contract. *Cf. Factory Mut. Ins. Co. v. Cica-Tect Terminal Equip. Corp.*, No. 05 C 4430, 2006 WL 3825028, at *3 (N.D. Ill. Dec. 20, 2006) (contract at issue "contains numerous sections that affirmatively mention [the third-party beneficiary]");

*Zurich Capital Mkts., Inc. v. Coglianese*, No. 03 C 7960, 2005 WL 1950653, at *8 (N.D. Ill. Aug. 12, 2005) (document that was explicitly incorporated into the contract listed the anticipated benefits to "investors"); *Paukovitz*, 649 N.E.2d at 475 (contract between builder and designer referred to the relevant plans by name of the future homeowner); *Tax Invs., Ltd.*, 763 F. Supp. at 1456 (incorporated letter of commitment repeatedly manifested intent to confer a benefit on "Participant").

Furthermore, under the terms of the Trust Agreement, Cole Taylor was at all times explicitly obligated to discharge its duties "*solely* in the interest of the Plan's Participants and other persons entitled to benefits under the Plan." (Trust Agreement § 2.5) (emphasis added). Considering the Trust Agreement as part of the pleadings, as it is obliged to do, the court finds that the language of the Trust Agreement is inconsistent with the Savaiano Defendant's claim that they are intended third-party beneficiaries of the Trust Agreement. Without any significant reference to the Savaiano Defendants in the language of the contract itself, as a matter of Illinois law the Savaiano Defendants cannot be considered third-party beneficiaries. Cole Taylor's motion to dismiss Count II of the Third-Party Complaint is therefore granted.

4.  Negligence

Cole Taylor next argues that the Savaiano Defendants have failed to state a claim for negligence, because they have not alleged any extra-contractual duties owed by Cole Taylor or any injury caused by Cole Taylor's alleged breach. In the alternative, Cole Taylor argues that any negligence claim is barred by the economic loss doctrine articulated in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982), and the applicable statute of limitations.

The Savaiano Defendants first invite the court's attention to the Third-Party Complaint,

wherein they allege that "[a]t all relevant times, Cole Taylor had a duty to use reasonable care and diligence in valuing and effecting the purchase of the Savaiano Defendants' shares." (Third-Party Compl. ¶ 50). Although Cole Taylor argues that this duty is merely conclusory, the court finds sufficient factual allegations in the Third-Party Complaint so as to raise the right to relief "above the speculative level." *Twombly*, 127 S. Ct. at 1965. The Savaiano Defendants have specifically alleged that Cole Taylor had a contractual duty to vouch for the legality, fairness, and accuracy of the Transaction. (*See* Third-Party Comp. ¶¶ 23-24). Courts applying Illinois law have recognized a special duty of care in these situations, such that "'one who in the course of his business or profession supplies information for the guidance of others in their business transactions' is liable for negligent misrepresentations that induce detrimental reliance." *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987) (quoting *Penrod v. Merrill Lynch, Pierce, Fenner & Smith*, 385 N.E.2d 376, 381 (Ill. App. Ct. 3d Dist. 1979) and citing *Perschall v. Raney*, 484 N.E.2d 1286, 1289 (Ill. App. Ct. 4th Dist. 1985)). Although the Supreme Court of Illinois held in *Moorman* that the plaintiff in that case was precluded from seeking recovery "for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation," the *Moorman* court also specifically reaffirmed its earlier holding that economic loss is recoverable "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman*, 435 N.E.2d at 452-53 (citing *Rozny v. Marnul*, 250 N.E.2d 656 (Ill. 1969)). The court finds that the Savaiano Defendants have adequately alleged the existence of an extra-contractual duty of care, such that their negligence claim is not barred by the *Moorman* doctrine. Furthermore, the Savaiano Defendants have sufficiently alleged specific harm, to the extent that they have alleged

13

financial losses on the sale of their United Labs stock and potential liability to United Labs, due to Cole Taylor's breach of its duty of care.

Finally, Cole Taylor argues that the Savaiano Defendants' negligence claim is barred by the applicable statute of limitations. *See* 735 Ill. Comp. Stat. 5/13-205. Because the discovery rule is equally applicable to negligence claims, *see Doe v. Montessori Sch.,* 678 N.E.2d 1082, 1089 (Ill. App. Ct. 1997), the court declines to find that Count III is barred by the applicable statute of limitations at this point in the proceedings. Cole Taylor's motion to dismiss Count III is denied.

5.  Indemnification and Contribution

In Counts IV and V of their Third-Party Complaint, the Savaiano Defendants assert rights of implied contractual indemnity and contribution against Cole Taylor. Cole Taylor argues that the Savaiano Defendants have failed to state a right to relief under either cause of action, because they have not adequately alleged (1) a contractual breach by Cole Taylor which caused a foreseeable contractual breach by the Savaiano Defendants; (2) a joint financial obligation between the Savaiano Defendants and Cole Taylor; or (3) Cole Taylor's potential liability in tort for the injury to United Labs, as required by state common law and the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/2. (Dkt. No. 128 at 12-14). In response, the Savaiano Defendants contend that their right to indemnification and contribution arises under federal common law, as articulated in *Alton Mem'l Hosp. v. Metro. Life Ins. Co.*, 656 F.2d 245, 250 (7th Cir. 1981). In *Alton*, the Seventh Circuit stated in *dicta* that:

> where an ERISA plan suffers losses and where the plan participants and beneficiaries have established a cause of action on their own behalf or on behalf of the plan assets against one fiduciary, that fiduciary may seek indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a).

14

*Id.*

Since its opinion in *Alton*, however, the Seventh Circuit has made clear that it remains an unsettled question of law whether ERISA defendants have a right to contribution from their co-fiduciaries in the Seventh Circuit. *See Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 413 (7th Cir. 2006) ("We assumed in [*Alton*] that they do, but did not actually discuss the question, which remains an open one in this circuit."). For the reasons articulated in *Daniels v. Bursey*, 329 F. Supp. 2d 975, 978-80 (N.D. Ill. 2004) (Kennelly, J.), this court finds it likely that the Seventh Circuit would recognize a right to contribution among co-fiduciaries to an ERISA plan, were the question properly presented to that court.

The problem in this case with asserting a claim for contribution among co-fiduciaries is that most of the Savaiano Defendants are not alleged to have owed any fiduciary duties to the ESOP II. Maureen Savaiano, Donald Savaiano, Robert Difino, and Jamie Savaiano Maloney are only alleged to have owed fiduciary duties to United Labs as former members of its Board of Directors. Because none of these defendants are subject to liability as fiduciaries to the ESOP II, they cannot assert a right of contribution against Cole Taylor as a co-fiduciary.

Furthermore, Maureen Savaiano, Donald Savaiano, Robert Difino, and Jamie Savaiano Maloney have not made any argument that their claims to contribution and indemnification should be supported on state law grounds. Because the Savaiano Defendants have not sufficiently supported their own claims to relief, the court grants Cole Taylor's motion to dismiss Counts IV and V of the Savaiano Defendants' Third-Party Complaint, insofar as Maureen Savaiano, Donald Savaiano, Robert Difino, and Jamie Savaiano Maloney seek indemnification

and/or contribution from Cole Taylor.

On the other hand, the court finds sufficient allegations in the Amended Complaint to support the Savaiano Defendants' argument that Nicholas Savaiano[5] may be entitled to indemnification and/or contribution from Cole Taylor. Cole Taylor argues that Nicholas Savaiano cannot have been a "co-fiduciary," because Nicholas Savaiano and Cole Taylor each served as Trustee to the ESOP II at different points in time. It is true that Cole Taylor is alleged to have officially served as Trustee to the ESOP II from August 2, 1996 to December 3, 1996, while Nicholas Savaiano is alleged to have been appointed Trustee on behalf of the ESOP II in December, 1996. (Am. Compl. ¶¶ 10, 38). However, Plaintiffs have clearly alleged that both Cole Taylor and Nicholas Savaiano owed (and breached) fiduciary duties to the ESOP II at the same point in time. (*See* Am. Compl. ¶¶ 199, 212). Plaintiffs also specifically allege that "Nick Savaiano controlled and managed the operation and administration of the ESOP II by directing the actions of its plan administrator and at times held himself out as and acted as Trustee on behalf of the ESOP II *prior to his appointment as Trustee* on behalf of the ESOP II in December, 1996." (Am. Compl. ¶ 38) (emphasis added). Because Cole Taylor and Nicholas Savaiano are alleged to have been co-fiduciaries to the ESOP II, the Savaiano Defendants have sufficiently stated a cause of action for indemnification and/or contribution under the federal common law. Cole Taylor's motion to dismiss Counts IV and V with respect to defendant Nicholas Savaiano is therefore denied.

---

[5] The estate of Nicholas Savaiano is represented by executor Maureen Savaiano in this matter.

## CONCLUSION

For the reasons stated above, Cole Taylor's Motion to Dismiss the Savaiano Defendants' Third-Party Complaint (Dkt. No. 127) is granted in part and denied in part. Count II is dismissed. Counts IV and V are dismissed insofar as they are asserted by Maureen Savaiano, Donald Savaiano, Robert Difino, and Jamie Savaiano Maloney. All other counts remain pending. The case remains set for a report on status at 9:00 a.m. on January 17, 2008 to discuss further scheduling in this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 19, 2007