IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED LABORATORIES, INC., a Delaware corporation, and JULIE ANNE BENSON, as directed Trustee on behalf of United Laboratories, Inc.'s Employee Stock Ownership Plan and as directed Trustee on behalf of United Laboratories, Inc.'s Leveraged Employee Stock Ownership Plan, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06 C 1442 |
| MAUREEN R. SAVAIANO, individually, as Executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust, DONALD F. SAVAIANO, individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust, ROBERT G. DIFINO, JAMIE SAVAIANO MALONEY and WILLAMETTE MANAGEMENT ASSOCIATES, INC., an Oregon corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| MAUREEN R. SAVAIANO, individually, as Executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust, DONALD F. SAVAIANO, individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust, ROBERT G. DIFINO, and JAMIE SAVAIANO MALONEY, | ) ) ) ) ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| MCDERMOTT WILL & EMERY LLP, an Illinois Limited Liability Partnership, | ) ) ) | |
| Third-Party Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 13, 2006, plaintiffs United Laboratories, Inc. ("United Labs") and Julie Anne Benson (as directed Trustee on behalf of United Labs' Employee Stock Ownership Plan ("ESOP I") and United Labs' Leveraged Employee Stock Ownership Plan ("ESOP II")) (collectively "Plaintiffs") filed a nine-count Amended Complaint alleging claims for breach of fiduciary duty, prohibited transactions, unjust enrichment, aiding and abetting breach of fiduciary duty, breach of contract, and civil conspiracy, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and state common law. The Amended Complaint was directed against defendants Willamette Management Associates Inc. ("Willamette"), Cole Taylor Bank ("Cole Taylor"), and former United Labs' Board of Directors members Maureen R. Savaiano,[1] Donald F. Savaiano,[2] Robert G. Difino, and Jamie Savaiano Maloney ("the Savaiano Defendants"). United Labs was founded by Nicholas Savaiano in 1964 and, until early 2004, its Board of Directors was at all times majority-controlled by members of the Savaiano family.[3]

Plaintiffs' claims generally stem from the events surrounding the creation of the ESOP II in August, 1996. At that time, United Labs (acting through its Board of Directors) engaged in a series of transactions for the purpose of creating and funding the ESOP II. Those transactions

---

[1] Maureen Savaiano is sued individually, as executor of the Estate of Nicholas J. Savaiano, deceased, and as Trustee of the Nicholas J. Savaiano 1997 Trust.

[2] Donald Savaiano is sued individually and as nominee for Florence Savaiano, a Trustee on behalf of the Scully Savaiano Insurance Trust.

[3] The Savaiano Defendants are each related to Nicholas Savaiano: Maureen Savaiano was married to Nicholas Savaiano; Donald Savaiano was Nicholas Savaiano's brother; Robert Difino is married to Nicholas Savaiano's sister; and Jamie Savaiano Maloney is the daughter of Nicholas and Maureen Savaiano. Nicholas Savaiano passed away on February 1, 2004.

included the purchase of 456,178 shares of United Labs Preferred Stock (the "Shares") from the Savaiano Defendants, the negotiation and execution of long-term loan agreements to finance the purchase of the Shares, and the transfer of assets and liabilities from United Labs' Zyme Flow™ Process Division to the newly-established United Laboratories International, LLC ("ULI"). While Plaintiffs generally allege that these transactions were imprudent, unfair, and ill-advised at the time of their execution, Plaintiffs also contend that the transactions constituted self-dealing in regards to the Savaiano Defendants, all of whom were then members of United Labs' Board of Directors. Specifically, Plaintiffs allege that the ESOP II purchased the Shares from the Savaiano Defendants at above-market value and that the Zyme-Flow™ Process Division was spun-off for the benefit of Nicholas and Maureen Savaiano, to the detriment of United Labs. Plaintiffs further allege that, on the Savaiano Defendants' watch, Nicholas and Maureen Savaiano were paid unreasonable and excessive salaries, benefits, and management fees; corporate assets were transferred to Nicholas Savaiano, Maureen Savaiano, and their relatives; proceeds from certain bank loans were paid to Nicholas and Maureen Savaiano to the financial detriment of the ESOP I and the ESOP II; and Maureen Savaiano accepted improper lease payments from United Labs. Plaintiffs assert that the Savaiano Defendants are liable for engaging in prohibited transactions (Count II), breaching their fiduciary duties to the ESOP II and United Labs (Counts III-V), unjust enrichment (Count VI), and conspiracy (Count IX).

In their Third-Party Complaint Against McDermott Will & Emery LLP ("McDermott"), the Savaiano Defendants/Third-Party Plaintiffs[4] contend that McDermott "will have liability to the Savaiano Defendants if the Savaiano Defendants have any liability to the Plaintiffs" in

---

[4] For clarity and ease of use, the court will refer to the Savaiano Defendants/Third-Party Plaintiffs simply as "the Savaianos" throughout the remainder of the opinion.

relation to Counts III, V, VI and IX (the "Claims"). (Third-Party Compl. ¶¶ 7, 11). The Savaianos' theory of recovery is based on their claim that McDermott "represented and provided legal advice to: (I) United Labs; (ii) ULI; (iii) Nicholas Savaiano as trustee of ESOP I and ESOP II; (iv) Nicholas Savaiano and the other Savaiano Defendants in their capacities as officers and directors of United Labs and ULI; and (v) Nicholas and Maureen Savaiano individually." (*Id.* ¶ 15). The Savaianos contend that McDermott "represented to the Savaiano Defendants that the transactions that are the subject of Plaintiffs' Claims did not violate any law or duties of the Savaiano Defendants," and that the Savaianos relied on McDermott's representations to their detriment. (*Id.* ¶¶ 18-20; 25-27). The Savaianos allege that McDermott is potentially liable to them for legal malpractice (Count 1) or, in the alternative, for negligent misrepresentation (Count 2).

On June 22, 2007, McDermott filed a Motion to Dismiss the Third-Party Complaint. (Dkt. No. 158). For the reasons stated below, McDermott's Motion to Dismiss the Third-Party Complaint is granted in part and denied in part. The motion is granted as to Count II, which is dismissed with prejudice. The motion is denied as to Count I, which remains pending against McDermott.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally needs to include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (May 21, 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). As long as the

4

factual allegations in the complaint "raise a right to relief above the speculative level" and plead "enough facts to state a claim to relief that is plausible on its face," the complaint will withstand a 12(b)(6) challenge. *Killingsworth*, 507 F.3d at 618 (quoting *Bell Atlantic*, 127 S. Ct. at 1965, 1974). The crux of the court's analysis is whether the factual detail in the complaint provides the defendant with sufficient notice of the claims alleged against him or her. *Id.* at 619 (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC*, 499 F.3d 663, 667 (7th Cir. 2007)).

In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1965). However, a plaintiff can plead herself out of court if a complaint includes facts that undermine its own allegations. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). Any exhibits attached to a complaint are considered to be a part of the pleadings. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

ANALYSIS

1. Statute of Repose

Both McDermott and the Savaianos agree that, under Illinois law, a six-year statute of repose applies to all actions brought against attorneys "arising out of an act or omission in the performance of professional services." 735 Ill. Comp. Stat. 5/13-214.3(b) and (c). This six-year period begins to run on the last date on which the attorney performed the work at issue. *Carlen v. First State Bank of Beecher City*, 857 N.E.2d 696, 700 (Ill. App. Ct. 5th Dist. 2006).

A statute of repose is an affirmative defense, and, in federal court, "[c]omplaints need not anticipate or attempt to defuse potential defenses." *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005). If the allegations of the Complaint include facts sufficient to establish an affirmative defense, however, a court may dismiss the claim pursuant to Rule 12(b)(6). *Hollander v. Brown*,

5

457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

In this case, McDermott argues that "the statute of repose bars almost all of the Third-Party Complaint." (Dkt. No. 160 at 5). Specifically, McDermott asserts that the Savaianos' third-party claims are time-barred to the extent they seek redress for legal advice or representations related to those acts which took place in or around August 1996, when the ESOP II was formed and United Labs purchased the Shares from the Savaiano Defendants. The court agrees that such claims are time-barred under the Illinois statute of repose.[5] To the extent the Savaianos seek to hold McDermott liable for legal advice or representations made in 1996, the Savaianos' claims are time-barred.

However, Plaintiffs also seek to hold the Savaianos liable for events that may have occurred more recently. For example, Plaintiffs allege that, as Trustee to the ESOP I and the ESOP II, Nicholas Savaiano "fail[ed] to assert a claim for the overcharge on the purchase of the Shares on behalf of the ESOP II." (Am. Compl. ¶ 212(l)). Nicholas Savaiano was Trustee of the ESOP II from December, 1996 until his death in February, 2004. In their Response, the Savaianos argue that "the proof will show that Nick Savaiano received advice from [McDermott] with respect to any alleged overcharge *within the statute of repose*." (Dkt. No. 169 at 9-10) (emphasis added). Because the allegations of the Third-Party Complaint, which includes the Amended Complaint as an attached exhibit, do not preclude this possibility, the court declines to

---

[5] The Savaianos state in their Response that, "[a]s a threshold matter, the Third-Party Complaint only seeks relief for those claims that survive the statute of repose." (Dkt. No. 169 at 8). Because the Savaianos specifically state that their Third-Party Complaint "is directed solely towards Plaintiffs' allegations relating to Counts III, V, VI and IX (the "Claims") *and events that occurred subsequent to the 1996 ESOP Transaction*," (Third-Party Compl. ¶ 11) (emphasis added), the Savaianos appear to concede that claims based on representations made in 1996 would be barred by the statute of repose.

dismiss the Savaianos' third-party claims to the extent they rely upon representations made to Nicholas Savaiano within the relevant time period.

Finally, the parties agree that McDermott could have given the Savaianos legal advice with respect to (1) the Fifth Third Bank Loan (Am. Compl. ¶¶ 141-142); (2) the United Labs/ULI Amended Supply Agreement (Am. Compl. ¶ 159); (3) the First Subordinated ESOP Loan Agreement (Am. Compl. ¶ 146); and (4) Nicholas and Maureen Savaiano's Amended Employment Agreements (Am. Compl. ¶¶ 117, 127) within the time limits of the statute of repose. Furthermore, it appears within the allegations of the Amended Complaint that the alleged improper transfer of certain corporate assets and improper lease payments also may have occurred within the statute of repose. (Am. Compl. ¶¶ 151, 165-177). On its face, neither the Third-Party Complaint nor the Amended Complaint indicates that claims based on advice related to these transactions are necessarily time-barred. To the extent the Savaianos' claims against McDermott are based on any legal advice or representations associated with the above-mentioned transactions, the Savaianos' third-party claims will not be dismissed at this stage in these proceedings due to the statute of repose.

2.   Damages Element

One of the elements necessary to both legal malpractice claims and negligent misrepresentation claims is actual damage to the plaintiff, proximately caused by the defendant's conduct or misrepresentations. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 394 (Ill. 2006) (legal malpractice); *Midfirst Bank v. Abney*, 850 N.E.2d 373, 386 (Ill. App. Ct. 2d Dist. 2006) (negligent misrepresentation). McDermott contends that, based on the allegations in the Amended Complaint and the Third-Party Complaint, the Savaianos are necessarily unable to demonstrate actual damages consistent with their claims against McDermott. Specifically,

7

McDermott argues that—because liability for the remaining claims (described in Part 1, *supra*) is based solely on a theory of unjust enrichment—the only loss to the Savaianos if they are found liable to Plaintiffs will be the return of property to which the Savaianos never had any entitlement. In other words, McDermott argues that *even if the Savaianos are found liable to Plaintiffs*, the Savaianos will not have "actually suffer[ed] monetary damages or loss." (Dkt. No. 171 at 5).

At the outset, the court notes that the remaining claims against the Savaianos are not all based on a theory of unjust enrichment. In Count III of the Amended Complaint, Plaintiffs allege that Nicholas Savaiano is liable for breaching his fiduciary duties to the ESOP I and the ESOP II for, *inter alia*, "[c]ausing proceeds from the Fifth Third Bank loans to be paid to Maureen Savaiano and himself to the financial detriment of the ESOP I and the ESOP II" and "[f]ailing to assert a claim for the overcharge on the purchase of the Shares on behalf of the ESOP II." (Am. Compl. ¶ 212(h) and (l)). Similarly, in Count V of the Amended Complaint, Plaintiffs allege that—as members of the Board of Directors—the Savaianos breached their fiduciary duties to United Labs by:

- (j) Allowing United Labs to enter into the employment agreements and related stock award agreements with Nicholas Savaiano and Maureen Savaiano which provided them with unreasonable and excessive compensation;

- (l) Permitting United Labs to enter into an amended supply agreement with ULI to the benefit of ULI and the detriment of United Labs;

- (m) Permitting United Labs to continue payments under leasing agreements with Maureen Savaiano to the detriment of United Labs;

- (n) Causing United Labs to enter into loan agreements with Fifth Third Bank for the benefit of certain members of the [August 16, 1996–January 14, 2004] Board of Directors;

8

(o) Approving and accepting the assignment of the First Subordinated ESOP Loan Agreement, the Subordinated Note for N.J. Savaiano and the Subordinated Note for M.R. Savaiano at a cost of $2.5 million plus accrued interest to the detriment of United Labs; [and]

(p) Transferring corporate assets to Nick Savaiano, Maureen Savaiano and their relatives.

(Am. Compl. ¶ 228).

McDermott has made no argument that potential liability for a breach of fiduciary duty fails to constitute "actual damages," or that the Savaianos have failed to allege sufficient damages in the event they are found liable to Plaintiffs on the two breach of fiduciary duty claims. Under Illinois law, the appropriate remedy for a breach of fiduciary duty is within the equitable discretion of the court and can include forfeiture of compensation by the fiduciary or, in some circumstances, the award of punitive damages. *In re Marriage of Pagano*, 607 N.E.2d 1242, 1249-50 (Ill. 1992). Plaintiffs have alleged that "as a direct and proximate result of the breaches of fiduciary duties by [the Savaianos], Plaintiffs have been and will continue to be damaged in an amount in excess of $10 million." (Am. Compl. ¶ 231) (*see also* Am. Compl. ¶ 213 ("[a]s a direct and proximate result of Nick Savaiano's breaches of his fiduciary duties, the ESOP I and the ESOP II were damaged in an amount in excess of $9 million")). In the event the Savaianos are found liable for breaching their fiduciary duties to Plaintiffs, the full extent and nature of the appropriate remedy will be determined by the court based on the facts before it at that time.

In Count VI, the unjust enrichment claim, Plaintiffs set forth an alternative theory of recovery, based on some of the same facts alleged in the breach of fiduciary duty claims. McDermott argues that—because the proper award for unjust enrichment is restitution, rather than damages—the Savaianos cannot contend that they will have suffered damages, even if they

9

are found liable on a theory of unjust enrichment. The Supreme Court of Illinois has recognized that "[d]amages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain." *Raintree Homes, Inc. v. Village of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) (quoting 1 D. Dobbs, Remedies § 3.1, at 278 (2d ed. 1993)). As discussed above, the third-party claims for legal malpractice and negligent misrepresentation each require a finding of "damages." In other words, the Savaianos must have suffered a measurable loss in order to be afforded relief. McDermott argues that the Savaianos will not have incurred any actionable loss in the event the court orders restitution and the Savaianos are forced to return the relevant property to Plaintiffs.

The proper amount of damages is a question of fact, although the measure of such damages is determined by the court as a question of law. *Tri-G,* 856 N.E.2d at 409. In this case, the court finds that it is premature to assume that restitution of certain property to Plaintiffs will result in no actual loss to the Savaianos. In other words, it is possible that the Savaianos could suffer measurable damages if they are ordered to return the property in question to Plaintiffs. Ultimately, this fact-based question is best deferred to a later point in the proceedings, when the Savaianos present their proof and will bear the burden of proving that they incurred actual damages as a result of following the advice provided by McDermott. In their Third-Party Complaint, the Savaianos allege that any potential liability they owe to Plaintiffs for the claims described above was proximately caused by the Savaianos' reliance on McDermott's legal advice and/or negligent misrepresentations. (Third-Party Compl. ¶¶ 11, 20, 27). The Savaianos are not required to plead more specific damages to state a plausible claim for either legal malpractice or negligent misrepresentation. It should be noted that Federal Rule of Civil Procedure 14(a) permits potential liability in the underlying action to function as a permissible

substitute for "actual damages" in a third-party claim. *See F.D.I.C. v. Wells*, 164 F.R.D. 472, 474-75 (N.D. Ill. 1995).

The Savaianos also argue that Illinois law entitles them to seek damages in the form of attorneys' fees, so long as such fees were incurred as a direct result of McDermott's alleged malpractice. (Dkt. No. 169 at 10-11). While this is a correct statement of the law, *see Lucey v. Law Offices of Pretzel & Stouffer, Chtd.*, 703 N.E.2d 473, 478 (Ill. App. Ct. 1st Dist. 1998), the Savaianos have not requested relief in the form of attorneys' fees. In their Third-Party Complaint, the only specific relief requested by the Savaianos is in "an amount equal to the amount of any liability assessed against the Savaiano Defendants relating to the Plaintiffs' Claims." (Third-Party Compl. at 7-8). The Savaianos' argument regarding attorneys' fees is therefore moot.

Finally, the court notes that the civil conspiracy claim, Count IX, is "based upon intentional activity," and liability will only be found if the Savaianos "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Adock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). In other words, "[t]here is no such thing as accidental, inadvertent or negligent participation in a conspiracy." *Id.* McDermott correctly argues that indemnification is not appropriate under these circumstances, because the Savaianos' liability pursuant to Count IX could not have been caused by McDermott's legal advice or misrepresentations. The court holds that the Savaianos are therefore precluded from seeking indemnification from McDermott for any liability assessed against them in regards to Count IX of the Amended Complaint.

3. <u>Count II - Negligent Misrepresentation</u>

11

To establish a claim for negligent misrepresentation, one of the elements a plaintiff must prove is that the defendant owed the plaintiff a duty to communicate accurate information. *Midfirst Bank v. Abney*, 850 N.E.2d 373, 386 (Ill. App. Ct. 2d Dist. 2006). In Count II of their Third-Party Complaint, the Savaianos allege that McDermott owed them such a duty, because the Savaianos were the intended third-party beneficiaries of the attorney-client relationship between United Labs and/or ULI and McDermott. (Third-Party Compl. ¶¶ 22-23). Under Illinois law, to establish a duty owed by a defendant attorney to a nonclient plaintiff, "plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney." *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982). In other words, "for a nonclient to succeed in a negligence action against an attorney, he must prove that the *primary* purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Id.* at 100 (emphasis added).

In this case, the Savaianos allege, "on information and belief," that "United Labs and/or ULI retained [McDermott] *for the primary purpose of effectuating the transactions* that are the subject of the Plaintiffs' Claims *for the benefit of Nicholas and Maureen Savaiano and the other Savaiano Defendants*" and that ""the Savaiano Defendants were intended third party beneficiaries of [McDermott's] representation of United Labs and ULI." (Third-Party Compl. ¶ 22) (emphases added). Without any allegations of fact to support these assertions, however, the court finds these statements to be no more than legal conclusions. The fact that the Savaianos were officers, directors, and shareholders of United Labs does not by itself indicate that the Savaianos were third-party beneficiaries of McDermott's attorney-client relationship with United Labs/ULI. *See Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1st Dist. 1995) ("The fact that [plaintiff] became a shareholder, officer, and director of the defendants' client . . . is of no

12

moment because the attorney for a corporate client owes his duty to the corporate entity, not its individual shareholders, officers, or directors."). Nor is a duty of care created merely because McDermott knew the Savaianos were likely to rely on advice given in McDermott's capacity as United Labs'/ULI's corporate counsel. *Felty v. Hartweg*, 523 N.E.2d 555, 556-57 (Ill. App. Ct. 4th Dist. 1988).

In Illinois, the general rule is that an attorney owes a duty of care only to his or her client, and not to third parties. *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. Ct. 1st Dist. 2004) (citing *Pelham*, 440 N.E.2d at 99). The court finds it implausible, on the facts alleged in the Savaiano's Third-Party Complaint, that United Labs and/or ULI contracted with McDermott *for the primary purpose* of benefitting the Savaianos, rather than the corporations themselves. Count II is therefore dismissed with prejudice.

4.      Pleading Requirements

Finally, McDermott argues that the Third-Party Complaint fails to state a claim because it never identifies (1) what work McDermott allegedly performed for the Savaianos; (2) what legal advice McDermott allegedly gave the Savaianos; (3) what McDermott allegedly did wrong with respect thereto; or (4) which of the actions for which the Savaianos are being sued supposedly are the result of McDermott's allegedly negligent legal advice. The court disagrees with this assessment of the Third-Party Complaint. The Third-Party Complaint specifically alleges that William W. Merten and other McDermott attorneys "drafted or participated in drafting of the documents and agreements that are the subject of Plaintiffs' Claims and counseled and advised Nicholas Savaiano, and the other Savaiano Defendants, concerning the documents and agreements that are the subject of Plaintiffs' Claims." (Third-Party Compl. ¶¶ 17, 24). The Third-Party Complaint goes on to allege that "Merten, and other [McDermott] attorneys,

13

represented to the Savaiano Defendants that the transactions that are the subject of Plaintiffs' Claims did not violate any law or duties of the Savaiano Defendants." (*Id.* ¶¶ 18, 25). Plaintiffs' "Claims" are defined as "Counts III, V, VI and IX," and are discussed with specificity as to the transactions and documents involved. (*Id.* ¶¶ 10-11).

The court finds that the Savaianos have sufficiently set forth their position that McDermott supplied the Savaianos with legal advice with respect to *any and all* of the transactions forming the basis of Plaintiffs' Claims against the Savaianos. Having been sufficiently apprised of the basis for the Savaianos' claims against it, McDermott is in a position to formulate an appropriate responsive pleading. McDermott's motion to dismiss the remaining claims on this basis is denied.

## CONCLUSION

For the reasons stated above, Third-Party Defendant McDermott Will & Emery LLP's Motion to Dismiss the Third-Party Complaint, (Dkt. No. 158), is granted in part and denied in part. The motion is granted as to Count II, which is dismissed with prejudice. The motion is denied as to Count I, which remains pending against McDermott. The case remains set for a report on status at 9:00 a.m. on January 17, 2008 to discuss further scheduling in this case.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: January 7, 2008